**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
MIDLAND DIVISION**

| | |
|---|---|
| POWERMAT TECHNOLOGIES LTD., <br><br> Plaintiff, <br><br> v. <br><br> APPLE INC. <br><br> Defendant. | Case No. 7:26-cv-00045 <br><br> **JURY TRIAL DEMANDED** |

## COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff Powermat Technologies Ltd. ("Powermat"), by and through its undersigned counsel, files this complaint under 35 U.S.C. § 271 against Defendant Apple Inc. ("Apple"), and alleges as follows, upon actual knowledge with respect to itself and its own acts, and upon information and belief as to all other matters.

## NATURE OF THE ACTION

1.      This is an action for patent infringement arising under the Patent Laws of the United States, 35 U.S.C. §§ 1, *et seq.*

## THE PARTIES

2.      Plaintiff Powermat Technologies Ltd. is an Israeli limited liability company with a principal place of business located at Communication Center, Bldg B, Neve Ilan 9085000, Israel.

3.      On information and belief, Defendant Apple Inc. is a California corporation having a principal place of business located at One Apple Park Way, Cupertino, California 95014; regular and established places of business in this District, at least at 8401 Gateway Boulevard West, El Paso, TX 79925; 15900 La Cantera Parkway, San Antonio, Texas 78256; 3121 Palm Way, Austin, Texas 78758; and 2901 S. Capital of Texas Highway, Austin, Texas 78746; and corporate offices at 12545 Riata Vista Circle, Austin, Texas 78727 and 6900 W. Parmer Lane, Austin, Texas 78729;

1

and other places of business at other locations in Texas. Apple offers and sells its products and/or services, including those accused herein of infringement, to customers and potential customers located in Texas, including in the judicial Western District of Texas. Apple may be served with process in the Western District of Texas through its registered agent for service in Texas: CT Corporation System, 1999 Bryan Street, Suite 900, Dallas, Texas 75201. Apple has been registered to do business in the State of Texas since at least May 16, 1980. https://mycpa.cpa.state.tx.us/coa/search.do (search for "Apple Inc." under "Entity Name") (last visited Feb. 10, 2026). Apple has maintained offices in Austin, Texas, since at least 1992. Austin-American Statesman, "Apple Expands Ahead of New $1B Campus," https://www.statesman.com/story/news/local/flash-briefing/2019/05/17/apple-expands-ahead-of-new-1-billion-austin-campus/5131912007/ (last visited Feb. 10, 2026).

## JURISDICTION AND VENUE

4.    This Court has subject matter jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1338(a) because the action arises under the patent laws of the United States, 35 U.S.C. §§ 271, *et seq.*

5.    This Court has general and specific personal jurisdiction over Apple pursuant to constitutional due process and/or the Texas Long Arm Statute, including Tex. Civ. Prac. & Rem. Code §§ 17.041 *et seq.*, because, *inter alia*, (i) Apple has done and continues to do business in this District and the State of Texas; and (ii) Apple has committed and continues to commit acts of direct and indirect patent infringement, as detailed herein, itself and through intermediaries, in this District and elsewhere in the State of Texas, including making, using, offering to sell, and/or selling accused products in this District and elsewhere in the State of Texas, and/or importing accused products into this District and elsewhere in the State of Texas.

6.      Venue is proper in this District pursuant to 28 U.S.C. § 1400(b). Apple has regular and established places of business in this District, including Apple Stores at 8401 Gateway Boulevard West, El Paso, TX 79925; 7400 San Pedro Avenue, San Antonio, Texas 78216; 15900 La Cantera Parkway, San Antonio, Texas 78256; 3121 Palm Way, Austin, Texas 78758; and 2901 S. Capital of Texas Highway, Austin, Texas 78746; and corporate offices at 12545 Riata Vista Circle, Austin, Texas 78727 and 6900 W Parmer Lane, Austin, Texas 78729. Accordingly, Apple is deemed to reside in this District, has committed acts of infringement in this District, and has purposely transacted business involving the accused products in this District.

## PATENTS-IN-SUIT

7.      The Asserted Patents are U.S. Patent Nos. 8,188,619; 8,283,812; 9,666,360; 11,611,240; and 11,626,759.

8.      U.S. Patent No. 8,188,619 ("the '619 Patent," attached hereto as **Exhibit 1**) duly issued on May 29, 2012, and is entitled "Non Resonant Inductive Power Transmission System and Method." Powermat is the owner by assignment of the '619 Patent and possesses all rights under the '619 Patent, including the exclusive right to recover for past and future infringement.

9.      U.S. Patent No. 8,283,812 ("the '812 Patent," attached hereto as **Exhibit 2**) duly issued on October 9, 2012 and is entitled, "Inductive Power Providing System Having Moving Outlets." Powermat is the owner by assignment of the '812 Patent and possesses all rights under the '812 Patent, including the exclusive right to recover for past and future infringement.

10.      U.S. Patent No. 9,666,360 ("the '360 Patent," attached hereto as **Exhibit 3**) duly issued on May 30, 2017 and is entitled, "Pinless Power Coupling." Powermat is the owner by assignment of the '360 Patent and possesses all rights under the '360 Patent, including the exclusive right to recover for past and future infringement.

11.    U.S. Patent No. 11,611,240 ("the '240 Patent," attached hereto as **Exhibit 4**) duly issued on March 21, 2023 and is entitled, "Pinless Power Coupling." Powermat is the owner by assignment of the '240 Patent and possesses all rights under the '240 Patent, including the exclusive right to recover for past and future infringement.

12.    U.S. Patent No. 11,626,759 ("the '759 Patent," attached hereto as **Exhibit 5**) duly issued on April 11, 2023 and is entitled, "System and Method for Providing Inductive Power at Multiple Power Levels." Powermat is the owner by assignment of the '759 Patent and possesses all rights under the '759 Patent, including the exclusive right to recover for past and future infringement.

## BACKGROUND

### Powermat's History

13.    Powermat was founded in 2006 in Neve Ilan, Israel, with the mission of enabling a 100% wireless future, in which devices and machines enjoy seamless, unlimited access to wireless power.

14.    Powermat offers a suite of standards-based and proprietary wireless power solutions, which have been incorporated into products and services across the globe, spanning a multitude of industries and sectors, including automotive, robotics, defense, consumer electronics, healthcare, and telecommunications.

15.    A core aspect of Powermat's wireless charging technology is inductive charging— a type of wireless power transfer that uses induction coils to create an alternating electromagnetic field, thereby transferring energy from a transmitter unit (*e.g.*, a wireless charging station) to a receiver unit (*e.g.*, a smartphone). The receiver unit then converts the energy into power that can charge a battery (*e.g.*, the battery within the smartphone).



16.    Powermat was one of the first companies to enter the domain of magnetic induction, reflected today in Powermat's significant brand recognition and technology leadership, and in the quality and scope of the Asserted Patents.

17.    In its early years (2006-2011), Powermat focused on introducing wireless power to consumers and building out its ecosystem of power transmitters and receivers. During this period, Powermat formed a number of strategic partnerships to commercialize its products, including with companies such as Homedics, T-Mobile, and General Motors. Products developed over this period included wireless charging platforms, mats, and other surfaces, as well as cases and backdoors for smartphones and gaming devices.

18.    In 2012, Powermat partnered with Duracell to expand its retail presence in the United States and the United Kingdom. That same year, Powermat partnered with Starbucks in what started as a ten-store pilot in Boston, and later turned into a 12,000-plus charging spot installation across five U.S. cities—New York, San Francisco, Los Angeles, Chicago, and Boston. Powermat's charging networks were installed by a number of significant brands, including McDonald's, Coffee Bean & Tea Leaf, Madison Square Garden, and Westfield.

19.    As a recognized leader and pioneer in wireless charging, Powermat collaborated with Procter & Gamble, Starbucks, and AT&T in 2012 to form the Power Matters Alliance (PMA),

a non-profit industry organization whose mission was to advance a suite of standards and protocols for wireless power transfer for mobile electronic devices. Around that same time, Powermat specifications were added as a requirement for certain mobile devices sold by AT&T, including Samsung, LG, ASUS, and Kyocera.

20.    Today, Powermat's technology can be found in millions of products, including mobile devices, electronic accessories, and automobiles. Recognizing its significant role in the wireless charging space, Powermat also developed a broad and extensive patent portfolio.

**Powermat's Patent Portfolio and the WPC**

21.    Powermat's patent portfolio includes nearly 240 patents in the U.S. and elsewhere, with dozens more pending, directed to various aspects of wireless charging. These patents cover both the power transmitter side (*e.g.*, the functionality incorporated into a wireless charging pad) and the power receiver side (*e.g.*, the functionality incorporated into products to allow wireless charging, including such products as mobile phones, wireless earbuds, watches, and more).

22.    Many patents in Powermat's portfolio predate the major wireless charging standards, including Qi (pronounced "chee")—the most widely adopted wireless charging standard. Many of the most popular consumer electronics goods are compatible with Qi.

23.    The Qi Standard was developed and is maintained by the Wireless Power Consortium (WPC). Many of Powermat's patents are essential to practicing the Qi Standard. The first version (Version 1.0) of the Qi Standard was issued in July 2010. *See* https://www.wirelesspowerconsortium.com/knowledge-base/specifications/history-of-the-qi-specifications/. All of the patents that Powermat asserts in this Complaint are Standard Essential Patents (SEPs), reflecting Powermat's significant contributions to the Qi Standard.

24.     Similar to many standard setting organizations (SSOs), the WPC has an intellectual property rights (IPR) policy, requiring that its members make certain SEPs available for license on reasonable and non-discriminatory (RAND or FRAND) terms.

25.     Specifically, the WPC's current IPR policy designates certain rights as "necessary" for the implementation of the Qi Standard.

> "Necessary Claims" means only those claims of any patent which would necessarily be infringed by implementation of an Approved Wireless Power Specification. A patent claim is "necessarily infringed" only when there is no technically reasonable non-infringing alternative for implementing an Approved Wireless Power Specifications (or portion thereof) without infringing the relevant patent claim.

> For the avoidance of doubt, the Members understand that no undertaking or licensing obligation hereunder (or pursuant to the Corporation in any way) shall require or extend to include patents or claims related to: (i) implementations of other recognized standards, even if those are referenced in the Approved Wireless Power Specification; (ii) any portions of products or devices other than those wireless charging portions of a product or device which are needed in order to comply with an Approved Wireless Charging Specification; or (iii) semiconductor manufacturing or semiconductor process intellectual property.

WPC (IPR) Policy, Article I Patent Licensing, Section 1.1 at 2 (available at https://www.wirelesspowerconsortium.com/media/jwgnnuf5/20200624-wpc-inc-ipr-policy.pdf).

26.     The WPC's IPR policy requires its members to license its "Necessary Claims" for RAND terms, with respect to power transmitters (*e.g.*, a device that transmits a wireless power charging signal) and power receivers (*e.g.*, a device that receives a wireless power charging signal) that are fully compliant with an Approved Wireless Power Specification:

> Each member undertakes to grant or cause the grant, on its own behalf on behalf of its Affiliated Entities and, subject to faithful performance of license terms, non-exclusive, non-transferrable, non-sublicenseable, world-wide licenses:

> (a)     on RAND Terms under its Necessary Claims to make, use, sell, offer to sell, import and otherwise dispose of Compliant Transmitters,

> (b)     on RAND Terms under its Necessary Claims to make, use, sell, offer to sell, import and otherwise dispose of Compliant Other Receivers, and

(c)    on RF Terms under its Necessary Claims solely to make, use, sell, offer to sell, import, and otherwise dispose of Compliant Lower Power Receivers.[1]

*Id.*, Section 1.3 at 4.

27.    As a longtime member of and significant contributor to the WPC, Powermat takes its RAND obligations seriously. As a result, Powermat has established standard rates for the licensing of its SEPs, which are RAND (*i.e.*, consistent with its obligations under the WPC's IPR policy) and have been accepted by the industry. Powermat also licenses its non-SEPs along with its SEPs.

28.    Apple is also a member of the WPC, and in fact has declared several of its products, including many of the products identified in this Complaint, as complying with the Qi Standard. Apple has also indicated, through the WPC website, particular aspects of the Qi Standard with which certain of its products comport.

---

[1] "Lower Power Receiver" is defined as a Receiver that is not capable of receiving more than 5 watts of charging power from a Transmitter. *Id.*, Section 1.1 at 2.



https://jpsapi.wirelesspowerconsortium.com/products/qi/8721.



https://jpsapi.wirelesspowerconsortium.com/products/qi/24389.



https://jpsapi.wirelesspowerconsortium.com/products/qi/23135.



https://jpsapi.wirelesspowerconsortium.com/products/qi/23774.

29.     Additionally, the Qi Standard provides examples of reference designs that can be

implemented by manufacturers to ensure that their power transmitters and receivers are in

compliance therewith. For each reference design, the Qi Standard provides a general description and a functional block diagram, along with mechanical and electrical details for the corresponding component.

30.     A manufacturer of a Qi-compliant product can specify to the public, via the WPC's website, the particular power profiles and reference design(s) with which its products comport. In this regard, several of the accused products for sale on Apple's website have been indicated, including by Apple, as comporting with one or more Qi power profiles and/or reference designs.



https://www.apple.com/iphone/compare/?modelList=iphone-16-pro,iphone-16-pro-max,iphone-16e.



https://jpsapi.wirelesspowerconsortium.com/products/qi/24389.



https://www.apple.com/shop/product/HRX62ZM/A/mophie-3-in-1-travel-charger-magsafe-compatible.



https://jpsapi.wirelesspowerconsortium.com/products/qi/21873.

31.    Indeed, at least as far back as 2017, Apple began certifying certain of its products as Qi-compliant and comporting with particular Qi power profiles.



https://jpsapi.wirelesspowerconsortium.com/products/qi/2258.



https://jpsapi.wirelesspowerconsortium.com/products/qi/2363.

**Powermat's Negotiations with Apple**

32.    Apple is aware that Powermat is a member of the WPC, and that it has many patents that contain "Necessary Claims" under the WPC's IPR Policy.

33.    Apple is also aware that Powermat has several patents that a party must implement in order to comply with particular aspects of the Qi Standard, including, for example, specific reference designs or power profiles.

34.    Powermat has reached out to Apple on numerous occasions regarding its wireless charging patent portfolio. For example, on information and belief, Apple has been aware of Powermat's patent portfolio relating to wireless charging since at least 2017 through discussions with Powermat. And at least as early as February 3, 2021, Apple has been on notice of how certain of its products infringe Powermat SEPs, as set forth in additional detailed claim charts supplied by Powermat.

35.    For example, on that date, Dr. Fatih Ozluturk from Powermat sent a letter to Ms. Krista Grewal—an attorney who works for Apple's legal department—explaining that Powermat was the owner of certain SEPs that are necessary for compliance with the Qi Standard, as well as other wireless charging standards. Dr. Ozluturk also explained that Apple had been incorporating Powermat's patented technology into its products, at least by virtue of Apple's purported compliance with the Qi Standard. The letter included exemplary infringement claim charts for several of Powermat's SEPs, including the '619 and '812 Patents asserted herein (Counts 1 and 2, respectively). The parties also exchanged a number of communications between February 2021 and May 28, 2021, including conducting online video meetings in February 2021 and May 2021,

but no agreements were reached. Instead, Apple sent Powermat a letter on June 18, 2021, with elaborate excuses for not seeking a license to Powermat's SEPs.

36.     Despite Powermat's efforts to negotiate the licensing of its patent portfolio—including an offer to negotiate a discounted rate—Apple refused to engage in any meaningful discussions and attempted to discredit the validity of Powermat's patents based on interpretations divorced from the teachings of the patents and the Qi Standard.

37.     On July 5, 2024, Dr. Ozluturk sent a letter to Mr. James Shin—as a follow up to Dr. Ozluturk's phone conversation on June 27, 2024, with Apple's Mr. Shin and Ms. Kuan Chieh ("Genie") Tu, related to Powermat's patent portfolio—with exemplary infringement claim charts for several of Powermat's SEPs, including the '240 Patent asserted herein (Count 4). Dr. Ozluturk understood that Apple would send its licensing offer shortly thereafter, but instead Dr. Ozluturk had to follow up four times before finally receiving a response in late January 2025. In that letter, Apple did not agree to Powermat's offered rates and instead attempted to discredit the validity and scope of Powermat's patents based on interpretations divorced from the teachings of the patents and the Qi Standard.

38.     On July 30, 2025, Dr. Ozluturk followed up again with Apple and sent a letter to Ms. Tu reiterating Powermat's good-faith belief that Apple requires a license to Powermat's patents to continue offering Qi-complaint and enabled products to its customers. Dr. Ozluturk also identified additional patents in Powermat's patent portfolio, including the '360 Patent and the '759 Patent asserted herein (Counts 3 and 5, respectively).

39.     Nearly four months later, Apple responded with a formal letter maintaining its incredible position that it did not need a license to Powermat's Qi SEPs. However, Apple offered a token offer to license Powermat's portfolio that amounted to just a small fraction of a penny per

device—a nominal, non-RAND, unrealistic offer that signaled Apple's intention to shut down meaningful negotiations for a serious licensing fee. The next week, Dr. Ozluturk replied, explaining why Apple's offer was grossly insufficient and entirely incongruous with the widely accepted market rate for Powermat's Qi SEPs. Nearly two weeks later, Apple replied and accused Powermat of falsely posturing for purposes of litigation, violating its own obligations to the Qi Standard, and peddling junk patents—all without addressing Powermat's explanations for its RAND pricing or revising its token offer. Apple's antagonistic mischaracterization of Powermat's position, combined with its established pattern of stonewalling licensing discussions before they developed into anything approaching meaningful negotiations, made clear that it would not willingly license Powermat's Qi SEPs at a reasonable rate.

40.     Through its refusal to negotiate in good faith or engage in genuine constructive dialogue about licensing Powermat's patent portfolio, Apple has demonstrated that it is an unwilling licensee. Accordingly, on February 11, 2026, Powermat notified Apple as a courtesy that it would be filing this present complaint.

41.     The United States Department of Justice, with the United States Patent and Trademark Office (USPTO) and the National Institute of Standards and Technology (NIST), have made clear that patent owners and potential licensees of SEPs should "engage in good-faith negotiations to reach F/RAND license terms" to "help reduce the costs and other burdens associated with litigation." 2019 Policy Statement on Remedies for SEPs Subject to Voluntary F/RAND Commitments, https://www.justice.gov/atr/page/file/1228016/dl?inline= (December 19, 2019).

42.     Apple has been operating and continues to operate without a license to Powermat's SEPs and other patents. The parties' licensing negotiations to-date have been unsuccessful due to Apple's refusal to engage in good-faith discussions about licensing Powermat's patent portfolio.

43.     Powermat is left with no choice but to bring the instant action to protect and enforce its intellectual property rights and the substantial investments made therein.

## COUNT 1 – INFRINGEMENT OF U.S. PATENT NO. 8,188,619

44.     Powermat incorporates paragraphs 1-43 above by reference.

45.     The '619 Patent is directed to a system for power regulation using frequency control, fault detection using voltage peak detectors and inductive communication channels. For example, the '619 Patent discloses an inductive power outlet that includes a primary inductive coil wired to a power supply via a driver. The primary inductive coil forms an inductive couple with a secondary inductive coil wired to an electric load and associated with an inductive power receiver. The driver provides a driving voltage—oscillating at a transmission frequency higher than the resonant frequency of the inductive couple—across the primary inductive coil. The primary inductive coil is wired to a reception circuit that includes a voltage monitor for monitoring the amplitude of a primary voltage across the primary coil. The secondary inductive coil is wired to a transmission circuit for connecting an electric element to the secondary inductive coil, which increases the resonant frequency via a control signal transferred from the transmission circuit to the reception circuit.

46.     Apple has directly infringed one or more claims of the '619 Patent in this District and elsewhere in the United States, including in Texas, including at least claims 1, 2, 4, 6, 7, 8, 12, 13, and 15 literally and/or under the doctrine of equivalents, by or through its sale, offer for sale, manufacture, use, or import of its wireless charging products, including at least the '619 Accused Power Receivers (*i.e.*, the iPhone 16e, the iPhone 16 Pro, the iPhone 16 Pro Max, the iPhone 16,

the iPhone 16 Plus, the iPhone 15 Pro, the iPhone 15 Pro Max, the iPhone 15, the iPhone 15 Plus, the iPhone 14 Pro Max, the iPhone 14 Pro, the iPhone 14 Plus, the iPhone 14, the iPhone SE (3rd generation), the iPhone 13 Pro Max, the iPhone 13 Pro, the iPhone 13, the iPhone 13 mini, the iPhone 12 Pro Max, the iPhone 12 Pro, the iPhone 12, the iPhone 12 mini, the iPhone SE (2nd generation), the iPhone 11 Pro Max, the iPhone 11 Pro, the iPhone 11, the iPhone XR, the iPhone XS Max, the iPhone XS, the iPhone X, the iPhone 8 Plus, the iPhone 8, the AirPods Pro (1st generation), the AirPods Pro (2nd generation), the AirPods (3rd generation), the AirPods 2 (with wireless charging case), the AirPods 3 (with wireless charging case), the AirPods 4 (with Active Noise Cancellation),[2] the MagSafe Battery Pack, the iPhone Air MagSafe Battery and any wireless power receiver product containing materially similar functionality that is made, used, sold, offered for sale, or imported by Apple) and the '619 Accused Power Transmitters (*i.e.*, the MagSafe Battery Pack, the iPhone Air MagSafe Battery, the MagSafe Charger (1m), the MagSafe Charger (2m), the MagSafe Duo Charger, the Courant 2-in-1 MagSafe Charger – Brown, the mophie Magnetic Wireless Charging Car Vent Mount (MagSafe compatible), the mophie 3-in-1 Travel Charger (MagSafe compatible), the Nimble Champ 10k Wireless Portable Charger, the Nimble Podium 3-in-1 Wireless Charger, the Nimble Fold 3-in-1 Wireless Charger - Deep Purple, the Nimble 3-in-1 Fold Wireless Charger – Black, the Nimble Valet 3-in-1 Wireless Charger, the Scosche MagicMount™ Charge Elite 3-in-1, the Twelve South Forté for MagSafe Charger, the Twelve South HiRise 2 Deluxe 2-in-1 Wireless Charging Stand, the Twelve South ButterFly SE 2-in-1 USB-C Qi2 Travel Charger – Purple, the Twelve South HiRise 3 Deluxe 3-in-1 Wireless Charging Stand – Black, the Zens 4-1 Wireless Charger, the Zens Quattro Wireless Charger Pro 4,

---

[2] All references herein to any "AirPods" product include the corresponding wireless charging case that is included with or may be purchased for such product. On information and belief, each such wireless charging case is or includes a Qi-compliant power receiver.

and any wireless power transmitter product containing materially similar functionality that is made, used, sold, offered for sale, or imported by Apple) (collectively, "the '619 Accused Products"). Powermat reserves the right to discover and pursue any additional infringing devices that incorporate infringing functionalities. For the avoidance of doubt, the '619 Accused Products are identified to describe Apple's infringement and in no way limit the discovery and infringement allegations against Apple concerning other devices that incorporate the same or reasonably similar functionalities.

47.     At least some of the asserted claims of the '619 Patent are essential to practicing the Qi Standard. Apple has indicated that the iPhone 16 complies with "Qi2 wireless charging up to 15W." https://support.apple.com/en-us/121029. Moreover, each of the '619 Accused Power Receivers is declared as supporting "Qi wireless power" and compliant with version 2.0 or later of the Qi Standard.

## 34.1 Qi Wireless Power

Devices supporting Qi wireless power:

- iPhone 17 Pro Max
- iPhone 17 Pro
- iPhone 17
- iPhone Air
- iPhone 16e
- iPhone 16 Pro Max
- iPhone 16 Pro
- iPhone 16 Plus
- iPhone 16
- iPhone 15 Pro Max
- iPhone 15 Pro
- iPhone 15 Plus
- iPhone 15
- iPhone 14 Pro Max
- iPhone 14 Pro
- iPhone 14 Plus
- iPhone 14
- iPhone SE (3rd generation)
- iPhone 13 Pro Max
- iPhone 13 Pro
- iPhone 13
- iPhone 13 mini
- iPhone 12 Pro Max
- iPhone 12 Pro
- iPhone 12
- iPhone 12 mini

---

- iPhone SE (2nd generation)
- iPhone 11 Pro Max
- iPhone 11 Pro
- iPhone 11
- iPhone XS Max
- iPhone XS
- iPhone XR
- iPhone X
- iPhone 8 Plus
- iPhone 8
- Wireless Charging Case (USB-C) for AirPods 4
- MagSafe Charging Case (USB-C) for AirPods Pro (2nd generation)
- MagSafe Charging Case for AirPods Pro (2nd generation)
- MagSafe Charging Case for AirPods (3rd generation)
- Wireless Charging Case for AirPods

Accessories incorporating a Qi transmitter shall use an embedded Qi Certified subsystem or shall be Qi Certified according to *The Qi Wireless Power Transfer System, Power Class 0 Specification–Version 2.0 or later*, see https://www.wirelesspowerconsortium.com. Accessories should support version 2.2 or later.

Accessory Design Guidelines for Apple Devices, R28 (dated December 8, 2025) at 182-83 (found

at https://developer.apple.com/accessories/Accessory-Design-Guidelines.pdf).

48.    Apple has also indicated that "[t]he MagSafe Charger is certified for Qi2 25W and Qi charging, so it can be used to wirelessly charge your iPhone 8 or later, as well as AirPods models with a wireless charging case" (*i.e.*, each of the '619 Accused Power Receivers). https://www.apple.com/shop/product/mgd74ll/a/magsafe-charger-1-m. As such, the iPhone 16, the MagSafe Charger, and all materially similar Apple products—including each of the '619 Accused Products—infringe at least claims 1, 2, 4, 6, 7, 8, 12, 13, and 15 of the '619 Patent, literally and/or under the doctrine of equivalents.

49.    Each of the '619 Accused Power Transmitters, including, for example, the MagSafe Charger, includes a primary coil wired to a power supply (*e.g.*, a primary coil within the MagSafe Charger wired to a power supply).



## Product Information                                                           ∧

**Overview**

The MagSafe Charger makes wireless charging a snap. The perfectly aligned magnets attach to compatible iPhone models. The MagSafe Charger provides faster wireless charging up to 25W when paired with a 30W power adapter.

The MagSafe Charger is certified for Qi2 25W and Qi charging, so it can be used to wirelessly charge your iPhone 8 or later, as well as AirPods models with a wireless charging case.

Available in two cable lengths: 1 meter and 2 meters.

The magnetic alignment experience only applies to iPhone 12, iPhone 13, iPhone 14, iPhone 15, compatible iPhone 16 models, iPhone 17 models, and iPhone Air.

Recommended:

For faster wireless charging up to 25W — up to 50 percent battery in around 30 minutes for compatible iPhone 16 models, iPhone 17 models, and iPhone Air when paired with the 30W USB-C Power Adapter (sold separately).**

For fast wireless charging up to 15W for iPhone 12 or later with MagSafe when paired with the 20W USB-C Power Adapter (sold separately).**

For wireless charging up to 7.5W for iPhone 8 or later with Qi when paired with the 20W USB-C Power Adapter (sold separately).**

https://www.apple.com/shop/product/mgd74ll/a/magsafe-charger-1-m.

Figure 2.2.2: 4 MPP PTx functional diagram.



Qi MPP System, Section 1.2.2 at 15.

50.    Each of the '619 Accused Power Transmitters, including for example, the MagSafe Charger, includes a primary coil for forming an inductive couple with a secondary coil wired to an electric load. Moreover, each of the '619 Accused Power Receivers, including, for example, the iPhone 16, includes a secondary coil wired to an electric load, like a battery, that couples with a primary coil.



[…]

| Power and Battery[16] | Video playback: Up to 22 hours |
|---|---|
| | Video playback (streamed): Up to 18 hours |
| | Audio playback: Up to 80 hours |
| | Built-in rechargeable lithium-ion battery |
| | MagSafe wireless charging up to 25W with 30W adapter or higher[17] |
| | Qi2 wireless charging up to 15W[17] |
| | Qi wireless charging up to 7.5W[17] |
| | Fast-charge capable: Up to 50% charge in around 30 minutes[17] with 20W adapter or higher paired with USB-C charging cable, or 30W adapter or higher paired with MagSafe Charger (all available separately) |
| MagSafe | Wireless charging up to 25W with 30W adapter or higher[17] |
| | Magnet array |
| | Alignment magnet |
| | Accessory Identification NFC |
| | Magnetometer |

https://support.apple.com/en-us/121029.

51.     Each of the '619 Accused Power Transmitters, including the MagSafe Charger, includes at least one primary coil in which a driver is configured to provide a driving voltage across the primary coil. For example, the MagSafe Charger is Qi-compliant and implements the Magnetic Power Profile ("MPP"), which requires at least one primary coil in which a driver is configured to

provide a driving voltage across the primary coil. *See, e.g.*, Qi MPP System, Section 1.2.1 at 13, 15; Qi MPP System, Section 4.3.1 at 66.

52.    Each of the '619 Accused Power Transmitters, including, for example, the MagSafe Charger, includes at least one primary unit in which the driver is configured to provide a driving voltage oscillating at a transmission frequency higher than the resonant frequency of the inductive couple. For example, the MagSafe Charger is Qi-compliant, and accordingly utilizes a driving voltage oscillating at a transmission frequency higher than the resonant frequency of an inductive couple. For example, in accordance with the Qi MPP System Specification, the MagSafe Charger utilizes a 128 kHz transmission frequency which is higher than the BPP resonant frequency, or a 360 kHz transmission frequency which is higher than the MPP resonant frequency. *See, e.g.*, Qi MPP System, Section 4.3.1 at 65-66, and 69.

53.    Each of the '619 Accused Power Transmitters, including, for example, the MagSafe Charger, is configured so that said primary inductive coil is further wired to a reception circuit comprising a voltage monitor for monitoring the amplitude of a primary voltage across said primary coil. For example, the MagSafe Charger is Qi-compliant and implements the MPP system architecture, which requires a reception circuit to receive electromagnetic signals (*e.g.*, modulated signals transmitted by a secondary unit). *See, e.g.*, Qi MPP System, Section 1.2.1 at 13. The MPP system architecture further requires, for example, a differential amplifier (*i.e.*, a voltage monitor) configured to measure the voltage across the primary coil. *See, e.g.*, Qi MPP System, Section 5.3.2.2 at 112-113.

54.    Each of the '619 Accused Power Receivers, including, for example, the iPhone 16, includes a secondary unit that incorporates at least one secondary inductive coil further wired to a transmission circuit for connecting at least one electric element to the secondary inductive coil

thereby increasing the resonant frequency. For example, the iPhone 16 is Qi-compliant and implements the MPP system architecture, which requires that the secondary inductive coil be wired to a transmission circuit that includes at least switchable tuning capacitors Crx1 and Crx2 and communication capacitors Ccomm1 and Ccomm2. *See, e.g.*, Qi MPP System, Section 4.2.1 at 59. For example, resonant capacitor Crx2 can be connected to the transmission path by closing switch S1 to increase the resonant frequency from a first value in MPP mode to a higher frequency. *Id*. *See also* Qi MPP System at 61.

55.    Each of the '619 Accused Power Receivers, including, for example, the iPhone 16, includes a secondary coil connected to a transmission circuit such that a control signal may be transferred from the transmission circuit to the reception circuit. For example, the iPhone 16 is Qi-compliant and implements the MPP system architecture, which employs a transmission circuit to generate and transmit bits by modulating bits onto the received power signal using a bit encoding scheme. *See, e.g.*, Qi MPP System, Section 5.3.2.1 at 110-113.

56.    The foregoing features and capabilities of the iPhone 16 and the MagSafe Charger, and Apple's description and/or demonstration thereof, including in user manuals and advertising, and in view of the Qi Standard, reflect Apple's direct infringement by satisfying every element of at least claims 1, 2, 4, 6, 7, 8, 12, 13, and 15 of the '619 Patent under 35 U.S.C. § 271(a).

57.    Apple has indirectly infringed at least claims 1, 2, 4, 6, 7, 8, 12, 13, and 15 of the '619 Patent in this District and elsewhere in the United States, including in Texas, by, among other things, willingly, knowingly, intentionally, and actively inducing the use, offering for sale, selling, or importation of at least the '619 Accused Products, and continues to do so by, for example, selling, offering for sale, and encouraging its customers to use the '619 Accused Products in an infringing manner by providing information and technical support, including in promotional

materials, product manuals, brochures, videos, demonstrations, and website materials. Apple's customers who purchase devices and components thereof and operate such devices and components in accordance with Apple's instructions directly infringe one or more claims of the '619 Patent in violation of 35 U.S.C. § 271. Apple instructs its customers through at least user guides, such as those for the iPhone 16 and the MagSafe Charger located at the following website: https://support.apple.com/guide/iphone/welcome/ios. For example, Apple instructs customers to wirelessly charge iPhones and AirPods using Qi-certified wireless chargers, like the MagSafe Charger. *See,  e.g.,*   https://support.apple.com/guide/iphone/qi-certified-wireless-chargers-iph91de3977e/26/ios/26   and   https://support.apple.com/guide/iphone/welcome/ios.   Apple   is therefore liable for infringement of the '619 Patent pursuant to 35 U.S.C. § 271(b).

58.     Apple has indirectly infringed at least claims 1, 2, 4, 6, 7, 8, 12, 13, and 15 of the '619 Patent by, among other things, knowingly contributing to the direct infringement of others, including customers of the '619 Accused Products by making, offering to sell, or selling, in the United States, or importing a component of a patented process, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in infringement of the '619 Patent, and not a staple article or commodity of commerce suitable for substantial non-infringing use.

59.     For example, each of the '619 Accused Products includes at least one component to monitor power transmission by an inductive power outlet. This is a component of a patented machine, manufacture, or combination, or an apparatus for use in practicing a patented process. Furthermore, such component is a material part of the invention and upon information and belief is not a staple article or commodity of commerce suitable for substantial non-infringing use. Thus, Apple is liable for infringement of the '619 Patent pursuant to 35 U.S.C. § 271(c).

60. Apple has been on notice of the '619 Patent since at least February 3, 2021. By the time of trial, Apple will thus have known and intended (since receiving such notice) that its continued actions would actively induce and contribute to infringement of at least claims 1, 2, 4, 6, 7, 8, 12, 13, and 15 of the '619 Patent.

61. Apple undertook and continues its infringing actions despite an objectively high likelihood that such activities infringed the '619 Patent, which has been duly issued by the USPTO, and is presumed valid. Moreover, Apple's infringement of the '619 Patent has been willful and exceptional in view of the above, as well as its failure to take any action, even after being put on notice, to stop its infringement, or inducement of, or contribution to, infringement by others. For example, since at least February 3, 2021, Apple has been aware that its actions constituted and continue to constitute infringement of the '619 Patent and that the '619 Patent is valid. On information and belief, Apple could not reasonably, subjectively believe that its actions do not constitute infringement of the '619 Patent, particularly in light of the standard compliance, nor could it reasonably, subjectively believe that the patent is invalid. Despite that knowledge and subjective belief, and the objectively high likelihood that its actions constitute infringement, Apple has continued its infringing activities. As such, Apple willfully infringes the '619 Patent.

62. Powermat has been damaged by Apple's infringement of the '619 Patent.

**COUNT 2 – INFRINGEMENT OF U.S. PATENT NO. 8,283,812**

63. Powermat incorporates paragraphs 1-62 above by reference.

64. The '812 Patent is directed to a protection system for preventing an inductive power providing system from transmitting power in the absence of an electric load. For example, the '812 Patent discloses a protection system for preventing an inductive power providing system from transmitting power in the absence of an electric load. The inductive power providing system includes: (1) a primary inductor that transfers power to a secondary inductor; (2) a circuit-breaker

for disconnecting the primary inductor from a power supply; (3) a primary detector for detecting power transmitted by the primary inductor; (4) a secondary detector for detecting the secondary inductor that is inductively coupled to the primary inductor; and (5) a controller that communicates with both the primary detector and the secondary detector, for triggering the circuit-breaker. The primary inductor radiates at a characteristic frequency f and the primary detector detects radiation at frequency f. The protection system also includes a modulator for tagging the radiation with a secondary tag that indicates that the secondary inductor—which demodulates the radiation and isolating the secondary signal—is inductively coupled to the primary inductor.

65.    Apple has directly infringed one or more claims of the '812 Patent in this District and elsewhere in the United States, including in Texas, including at least claims 6-8 literally and/or under the doctrine of equivalents, by or through its sale, offer for sale, manufacture, use, or import of its wireless charging products, including at least the '812 Accused Power Receivers (*i.e.*, the iPhone 16e, the iPhone 16 Pro, the iPhone 16 Pro Max, the iPhone 16, the iPhone 16 Plus, the iPhone 15 Pro, the iPhone 15 Pro Max, the iPhone 15, the iPhone 15 Plus, the iPhone 14 Pro Max, the iPhone 14 Pro, the iPhone 14 Plus, the iPhone 14, the iPhone SE (3rd generation), the iPhone 13 Pro Max, the iPhone 13 Pro, the iPhone 13, the iPhone 13 mini, the iPhone 12 Pro Max, the iPhone 12 Pro, the iPhone 12, the iPhone 12 mini, the iPhone SE (2nd generation), the iPhone 11 Pro Max, the iPhone 11 Pro, the iPhone 11, the iPhone XR, the iPhone XS Max, the iPhone XS, the iPhone X, the iPhone 8 Plus, the iPhone 8, the AirPods Pro (1st generation), the AirPods Pro (2nd generation), the AirPods (3rd generation), the AirPods 2 (with wireless charging case), the AirPods 3 (with wireless charging case), the AirPods 4 (with Active Noise Cancellation), the MagSafe Battery Pack, the iPhone Air MagSafe Battery, the Nimble Champ 10k Wireless Portable Charger, and any wireless power receiver product containing materially similar functionality that

is made, used, sold, offered for sale, or imported by Apple) and the '812 Accused Power Transmitters (*i.e.*, the MagSafe Battery Pack, the iPhone Air MagSafe Battery, the MagSafe Charger (1m), the MagSafe Charger (2m), the MagSafe Duo Charger, the Courant 2-in-1 MagSafe Charger – Brown, the mophie Magnetic Wireless Charging Car Vent Mount (MagSafe compatible), the mophie 3-in-1 Travel Charger (MagSafe compatible), the Nimble Champ 10k Wireless Portable Charger, the Nimble Podium 3-in-1 Wireless Charger, the Nimble Fold 3-in-1 Wireless Charger - Deep Purple, the Nimble 3-in-1 Fold Wireless Charger – Black, the Nimble Valet 3-in-1 Wireless Charger, the Scosche MagicMount™ Charge Elite 3-in-1, the Twelve South Forté for MagSafe Charger, the Twelve South HiRise 2 Deluxe 2-in-1 Wireless Charging Stand, the Twelve South ButterFly SE 2-in-1 USB-C Qi2 Travel Charger – Purple, the Twelve South HiRise 3 Deluxe 3-in-1 Wireless Charging Stand – Black, the Zens 4-1 Wireless Charger, the Zens Quattro Wireless Charger Pro 4, and any wireless power transmitter product containing materially similar functionality that is made, used, sold, offered for sale, or imported by Apple) (collectively, "the '812 Accused Products"). Powermat reserves the right to discover and pursue any additional infringing devices that incorporate infringing functionalities. For the avoidance of doubt, the '812 Accused Products are identified to describe Apple's infringement and in no way limit the discovery and infringement allegations against Apple concerning other devices that incorporate the same or reasonably similar functionalities.

66.    At least some of the asserted claims of the '812 Patent are essential to practicing the Qi Standard. Apple has indicated that the iPhone 16 complies with "Qi2 wireless charging up to 15W." https://support.apple.com/en-us/121029. Moreover, each of the '812 Accused Power Receivers is declared as supporting "Qi wireless power" and compliant with version 2.0 or later of the Qi Standard.

## 34.1 Qi Wireless Power

Devices supporting Qi wireless power:

* iPhone 17 Pro Max
* iPhone 17 Pro
* iPhone 17
* iPhone Air
* iPhone 16e
* iPhone 16 Pro Max
* iPhone 16 Pro
* iPhone 16 Plus
* iPhone 16
* iPhone 15 Pro Max
* iPhone 15 Pro
* iPhone 15 Plus
* iPhone 15
* iPhone 14 Pro Max
* iPhone 14 Pro
* iPhone 14 Plus
* iPhone 14
* iPhone SE (3rd generation)
* iPhone 13 Pro Max
* iPhone 13 Pro
* iPhone 13
* iPhone 13 mini
* iPhone 12 Pro Max
* iPhone 12 Pro
* iPhone 12
* iPhone 12 mini

---

* iPhone SE (2nd generation)
* iPhone 11 Pro Max
* iPhone 11 Pro
* iPhone 11
* iPhone XS Max
* iPhone XS
* iPhone XR
* iPhone X
* iPhone 8 Plus
* iPhone 8
* Wireless Charging Case (USB-C) for AirPods 4
* MagSafe Charging Case (USB-C) for AirPods Pro (2nd generation)
* MagSafe Charging Case for AirPods Pro (2nd generation)
* MagSafe Charging Case for AirPods (3rd generation)
* Wireless Charging Case for AirPods

Accessories incorporating a Qi wireless transmitter shall use an embedded Qi Certified subsystem or shall be Qi Certified according to *The Qi Wireless Power Transfer System, Power Class 0 Specification – Version 2.0 or later*, see https://www.wirelesspowerconsortium.com. Accessories should support version 2.2 or later.

Accessory Design Guidelines for Apple Devices, R28 (dated December 8, 2025) at 182-83 (found at https://developer.apple.com/accessories/Accessory-Design-Guidelines.pdf).

67.     Apple has also indicated that "[t]he MagSafe Charger is certified for Qi2 25W and Qi charging, so it can be used to wirelessly charge your iPhone 8 or later, as well as AirPods models with a wireless charging case" (*i.e.*, each of the '812 Accused Power Receivers). https://www.apple.com/shop/product/mgd74ll/a/magsafe-charger-1-m. (*i.e.*, each of the '812 Accused Power Receivers)\. As such, the iPhone 16, the MagSafe Charger, and all materially similar Apple products—including each of the '812 Accused Products—infringe at least claims 6-8 of the '812 Patent, literally and/or under the doctrine of equivalents.

68.     Each of the '812 Accused Power Transmitters, including, for example, the MagSafe Charger, includes a primary inductor configured to transfer power to at least one secondary inductor.



## Product Information ︿

Overview

The MagSafe Charger makes wireless charging a snap. The perfectly aligned magnets attach to compatible iPhone models. The MagSafe Charger provides faster wireless charging up to 25W when paired with a 30W power adapter.

The MagSafe Charger is certified for Qi2 25W and Qi charging, so it can be used to wirelessly charge your iPhone 8 or later, as well as AirPods models with a wireless charging case.

Available in two cable lengths: 1 meter and 2 meters.

The magnetic alignment experience only applies to iPhone 12, iPhone 13, iPhone 14, iPhone 15, compatible iPhone 16 models, iPhone 17 models, and iPhone Air.

Recommended:

For faster wireless charging up to 25W — up to 50 percent battery in around 30 minutes for compatible iPhone 16 models, iPhone 17 models, and iPhone Air when paired with the 30W USB-C Power Adapter (sold separately).**

For fast wireless charging up to 15W for iPhone 12 or later with MagSafe when paired with the 20W USB-C Power Adapter (sold separately).**

For wireless charging up to 7.5W for iPhone 8 or later with Qi when paired with the 20W USB-C Power Adapter (sold separately).**

https://www.apple.com/shop/product/mgd74ll/a/magsafe-charger-1-m.

Figure 2.2.2: 4 MPP PTx functional diagram.



**MPP PTx**

Qi MPP System, Section 1.2.2 at 15.

69.    Each of the '812 Accused Power Receivers, including, for example, the iPhone 16, includes a secondary inductor for receiving power from at least one primary inductor.



https://support.apple.com/en-us/121029.

70.    Each of the '812 Accused Power Transmitters, including, for example, the MagSafe Charger, includes at least one circuit-breaker for disconnecting said primary inductor from a power supply. For example, the MagSafe Charger is Qi-compliant and implements the Magnetic Power

Profile ("MPP"), which requires at least one circuit-breaker for disconnecting said primary inductor from a power supply. *See, e.g.*, Qi Interface Definitions, Section 5.3.5 at 110. For example, the MagSafe charger must incorporate a circuit-breaker as part of technologies that reduce energy waste in the absence of an electric load.

> Apple's MagSafe wireless charging provides optimal magnetic alignment for faster, more efficient charging. MagSafe wireless charging includes technologies that reduce energy waste when compared to other wireless charging methods.

https://support.apple.com/en-us/105047.

71.     Each of the '812 Accused Power Receivers, including, for example, the iPhone 16, includes at least one primary detector for detecting power transmitted by said primary inductor. For example, the iPhone 16 is Qi-compliant and implements the MPP system, which requires at least one primary detector for detecting power transmitted by said primary inductor. *See, e.g.*, Qi Interface Definitions at 23-24, 28, 46-47.

72.     Each of the '812 Accused Power Transmitters, including, for example, the MagSafe Charger, includes at least one secondary detector for detecting said secondary inductor inductively coupled to said primary inductor. For example, the MagSafe Charger is Qi-compliant and implements the MPP system, which requires at least one secondary detector such an ASK demodulator, ASK receiver, and/or a Control Unit for detecting said secondary inductor inductively coupled to said primary inductor. *See, e.g.*, Qi Interface Definitions at 23-24, 28, 46-47; Qi MPP System, Section 1 at 15; Qi MPP System, Section 5.3.2.2 at 112-13 .

73.     Each of the '812 Accused Power Transmitters, including, for example, the MagSafe Charger, includes at least one controller in communication with both said primary detector and said secondary detector, for triggering said circuit-breaker. For example, the MagSafe Charger is Qi-compliant and implements the MPP system, which requires at least one controller in

communication with both said primary detector and said secondary detector, for triggering said circuit-breaker. *See, e.g.*, Qi MPP System, Section 1 at 15, Section 5 at 106.

74. Each of the '812 Accused Power Transmitters, including, for example, the MagSafe Charger, includes a primary inductor that radiates at a characteristic frequency f, and each of the '812 Accused Power Receivers includes a primary detector that is configured to detect radiation at frequency f. For example, the MagSafe Charger is Qi-compliant and implements the MPP system, which requires a primary inductor that radiates at a characteristic frequency f, such as 128 kHz or 360 kHz. *See, e.g.*, MPP System at 59, 65, 105. Moreover, the iPhone 16 is Qi-compliant and implements the MPP system, which requires a primary detector that is configured to detect radiation at frequency f, such as 128 kHz or 360 kHz. *See, e.g.*, MPP System at 59, 65, 105.

75. Each of the '812 Accused Products includes a modulator for tagging the radiation with a secondary tag indicating that said secondary inductor is inductively coupled to the primary inductor, where the secondary detector includes a processor for demodulating the radiation and isolating the secondary signal. For example, the MagSafe Charger and/or the iPhone 16 are Qi-compliant and, on information and belief, include a modulator such as an ASK modulator, ASK transmitter, and/or a Communications/Control Unit for tagging the radiation with a secondary tag indicating that the secondary inductor is inductively coupled to the primary inductor, where the secondary detector includes a processor for demodulating the radiation and isolating the secondary signal. *See, e.g.*, Qi MPP System at 106-07, 109-10, 112.

76. The forgoing features and capabilities of the '812 Accused Products, and Apple's description and/or demonstration thereof, including user manuals and advertising, in view of the Qi Standard, reflect Apple's direct infringement by satisfying every element of at least claims 6-8 of the '812 Patent, under 35 U.S.C. § 271(a).

77.    Apple has indirectly infringed at least claims 6-8 of the '812 Patent in this District and elsewhere in the United States, including in Texas, by, among other things, willingly, knowingly, intentionally, and actively inducing the use, offering for sale, selling, or importation of at least the '812 Accused Products, and continues to do so by, for example, selling, offering for sale, and encouraging its customers to use the '812 Accused Products in an infringing manner by providing information and technical support, including in promotional materials, product manuals, brochures, videos, demonstrations, and website materials. Apple's customers who purchase devices and components thereof and operate such devices and components in accordance with Apple's instructions directly infringe one or more claims of the '812 Patent in violation of 35 U.S.C. § 271. Apple instructs its customers through at least user guides, such as those for the iPhone 16 and the MagSafe Charger located at the following website: https://support.apple.com/guide/iphone/welcome/ios. For example, Apple instructs customers to wirelessly charge iPhones and AirPods using Qi-certified wireless chargers, like the MagSafe Charger. *See, e.g.,* https://support.apple.com/guide/iphone/qi-certified-wireless-chargers-iph91de3977e/26/ios/26 and https://support.apple.com/guide/iphone/welcome/ios. Apple is therefore liable for infringement of the '812 Patent pursuant to 35 U.S.C. § 271(b).

78.    Apple has indirectly infringed at least claims 6-8 of the '812 Patent by, among other things, knowingly contributing to the direct infringement of others, including customers of the '812 Accused Products by making, offering to sell, or selling, in the United States, or importing a component of a patented process, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in infringement of the '812 Patent, and not a staple article or commodity of commerce suitable for substantial non-infringing use.

79.     For example, the '812 Accused Products include at least one component for preventing an inductive power providing system from transmitting power in the absence of an electric load. This is a component of a patented machine, manufacture, or combination, or an apparatus for use in practicing a patented process. Furthermore, such component is a material part of the invention and upon information and belief is not a staple article or commodity of commerce suitable for substantial non-infringing use. Thus, Apple is liable for infringement of the '812 Patent pursuant to 35 U.S.C. § 271(c).

80.     Apple has been on notice of the '812 Patent since at least February 3, 2021. By the time of trial, Apple will thus have known and intended (since receiving such notice) that its continued actions would actively induce and contribute to infringement of at least claims 6-8 of the '812 Patent.

81.     Apple undertook and continues its infringing actions despite an objectively high likelihood that such activities infringed the '812 Patent, which has been duly issued by the USPTO, and is presumed valid. Moreover, Apple's infringement of the '812 Patent has been willful and exceptional in view of the above, as well as its failure to take any action, even after being put on notice, to stop its infringement, or inducement of, or contribution to, infringement by others. For example, since at least February 3, 2021, Apple has been aware that its actions constituted and continue to constitute infringement of the '812 Patent and that the '812 Patent is valid. On information and belief, Apple could not reasonably, subjectively believe that its actions do not constitute infringement of the '812 Patent, particularly in light of the standard compliance, nor could it reasonably, subjectively believe that the patent is invalid. Despite that knowledge and subjective belief, and the objectively high likelihood that its actions constitute infringement, Apple has continued its infringing activities. As such, Apple willfully infringes the '812 Patent.

82.    Powermat has been damaged by Apple's infringement of the '812 Patent.

**COUNT 3 – INFRINGEMENT OF U.S. PATENT NO. 9,666,360**

83.    Powermat incorporates paragraphs 1-82 above by reference.

84.    The '360 Patent is directed to a primary unit operable to transmit power wirelessly to a secondary unit operable to receive power wirelessly and a secondary unit operable to receive power wirelessly from a primary unit that transmits power wirelessly. For example, the '360 Patent discloses a primary coil that transmits power to the secondary unit and includes a driver with: (1) a switching unit and a high frequency oscillating voltage supply that provides a high frequency oscillating voltage across the primary coil; (2) a primary signal receiver that receives electromagnetic signals that include a regulation signal and a confirmation signal; and (3) a primary microcontroller that generates detection pulses, to activate the driver in response to the confirmation signal, and to regulate the driver according to the regulation signal.

85.    The '360 Patent further discloses a secondary coil that receives power wirelessly from the primary unit and includes: (1) a secondary signal transmitter that transmits electromagnetic signals that include a regulation signal and a confirmation signal to the primary unit; and (2) a secondary microcontroller that generates a confirmation signal in response to a detection pulse received from the primary unit, to monitor power transferred to the secondary coil, and to generate a regulation signal based on monitored power.

86.    Apple has directly infringed one or more claims of the '360 Patent in this District and elsewhere in the United States, including in Texas, including at least claims 1-20 literally and/or under the doctrine of equivalents, by or through its sale, offer for sale, manufacture, use, or import of its wireless charging products, including at least the '360 Accused Power Receivers (*i.e.*, the iPhone 16e, the iPhone 16 Pro, the iPhone 16 Pro Max, the iPhone 16, the iPhone 16 Plus, the iPhone 15 Pro, the iPhone 15 Pro Max, the iPhone 15, the iPhone 15 Plus, the iPhone 14 Pro Max,

the iPhone 14 Pro, the iPhone 14 Plus, the iPhone 14, the iPhone SE (3rd generation), the iPhone 13 Pro Max, the iPhone 13 Pro, the iPhone 13, the iPhone 13 mini, the iPhone 12 Pro Max, the iPhone 12 Pro, the iPhone 12, the iPhone 12 mini, the iPhone SE (2nd generation), the iPhone 11 Pro Max, the iPhone 11 Pro, the iPhone 11, the iPhone XR, the iPhone XS Max, the iPhone XS, the iPhone X, the iPhone 8 Plus, the iPhone 8, the AirPods Pro (1st generation), the AirPods Pro (2nd generation), the AirPods (3rd generation), the AirPods 2 (with wireless charging case), the AirPods 3 (with wireless charging case), the AirPods 4 (with Active Noise Cancellation), the MagSafe Battery Pack, the iPhone Air MagSafe Battery, the Nimble Champ 10k Wireless Portable Charger, and any wireless power receiver product containing materially similar functionality that is made, used, sold, offered for sale, or imported by Apple) and the '360 Accused Power Transmitters (*i.e.*, the MagSafe Battery Pack, the iPhone Air MagSafe Battery, the MagSafe Charger (1m), the MagSafe Charger (2m), the MagSafe Duo Charger, the Courant 2-in-1 MagSafe Charger – Brown, the mophie Magnetic Wireless Charging Car Vent Mount (MagSafe compatible), the mophie 3-in-1 Travel Charger (MagSafe compatible), the Nimble Champ 10k Wireless Portable Charger, the Nimble Podium 3-in-1 Wireless Charger, the Nimble Fold 3-in-1 Wireless Charger - Deep Purple, the Nimble 3-in-1 Fold Wireless Charger – Black, the Nimble Valet 3-in-1 Wireless Charger, the Scosche MagicMount™ Charge Elite 3-in-1, the Twelve South Forté for MagSafe Charger, the Twelve South HiRise 2 Deluxe 2-in-1 Wireless Charging Stand, the Twelve South ButterFly SE 2-in-1 USB-C Qi2 Travel Charger – Purple, the Twelve South HiRise 3 Deluxe 3-in-1 Wireless Charging Stand – Black, the Zens 4-1 Wireless Charger, the Zens Quattro Wireless Charger Pro 4, and any wireless power transmitter product containing materially similar functionality that is made, used, sold, offered for sale, or imported by Apple) (collectively, "the '360 Accused Products"). Powermat reserves the right to discover and pursue any additional

infringing devices that incorporate infringing functionalities. For the avoidance of doubt, the '360 Accused Products are identified to describe Apple's infringement and in no way limit the discovery and infringement allegations against Apple concerning other devices that incorporate the same or reasonably similar functionalities.

87.    At least some of the asserted claims of the '360 Patent are essential to practicing the Qi Standard. Apple has indicated that the iPhone 16 complies with "Qi2 wireless charging up to 15W." https://support.apple.com/en-us/121029. Moreover, each of the '360 Accused Power Receivers is declared as supporting "Qi wireless power" and compliant with version 2.0 or later of the Qi Standard.

## 34.1 Qi Wireless Power

Devices supporting Qi wireless power:

- iPhone 17 Pro Max
- iPhone 17 Pro
- iPhone 17
- iPhone Air
- iPhone 16e
- iPhone 16 Pro Max
- iPhone 16 Pro
- iPhone 16 Plus
- iPhone 16
- iPhone 15 Pro Max
- iPhone 15 Pro
- iPhone 15 Plus
- iPhone 15
- iPhone 14 Pro Max
- iPhone 14 Pro
- iPhone 14 Plus
- iPhone 14
- iPhone SE (3rd generation)
- iPhone 13 Pro Max
- iPhone 13 Pro
- iPhone 13
- iPhone 13 mini
- iPhone 12 Pro Max
- iPhone 12 Pro
- iPhone 12
- iPhone 12 mini

Accessory Design Guidelines for Apple Devices, R28 (dated December 8, 2025) at 182-83 (found at https://developer.apple.com/accessories/Accessory-Design-Guidelines.pdf).

88.    Apple has also indicated that that "[t]he MagSafe Charger is certified for Qi2 25W and Qi charging, so it can be used to wirelessly charge your iPhone 8 or later, as well as AirPods models with a wireless charging case" (*i.e.*, each of the '360 Accused Power Receivers). https://www.apple.com/shop/product/mgd74ll/a/magsafe-charger-1-m. As such, the iPhone 16, the MagSafe Charger, and all materially similar Apple products—including each of the '360 Accused Products—infringe at least claims 1-20 of the '360 Patent, literally and/or under the doctrine of equivalents.

89.    Each of the '360 Accused Power Transmitters, including, for example, the MagSafe Charger, incorporates a primary unit operable to transmit power wirelessly to a secondary unit operable to receive power wirelessly. For example, the MagSafe Charger is Qi-compliant and implements the Magnetic Power Profile ("MPP"), which requires a primary unit operable to transmit power wirelessly to a secondary unit operable to receive power wirelessly. *See, e.g.*, Qi Introduction, Section 3.1 at 2.

90.     Each of the '360 Accused Power Transmitters, including, for example, the MagSafe Charger, includes at least one primary coil operable to transmit power to said secondary unit. For example, the MagSafe Charger is Qi-compliant and implements the MPP system, which requires at least one primary coil operable to transmit power to said secondary unit. *See, e.g.*, Qi Introduction, Section 3.1 at 2.

91.     Each of the '360 Accused Power Transmitters, including, for example, the MagSafe Charger, includes at least one driver comprising a switching unit and a high frequency oscillating voltage supply operable to provide a high frequency oscillating voltage across said at least one primary coil. For example, the MagSafe Charger is Qi-compliant and implements the MPP system, which requires at least one driver comprising a switching unit and a high frequency oscillating voltage supply operable to provide a high frequency oscillating voltage across said at least one primary coil. *See, e.g.*, Qi Power Delivery, Section 2 at 8, Section 5.1 at 19; Qi MPP System, Section 1.2.1 at 13, Section 1.2.2 at 15, Section 4.3.1 at 65-66; Qi PTx Reference Designs, Section 14 at 42, Section 31 at 107, Section 32 at 113, Section 48 at 165.

92.     Each of the '360 Accused Power Transmitters, including, for example, the MagSafe Charger, includes at least one primary signal receiver operable to receive electromagnetic signals. For example, the MagSafe Charger is Qi-compliant and implements the MPP system, which requires at least one primary signal receiver operable to receive electromagnetic signals. *See, e.g.*, Qi MPP System, Section 1.2.1 at 13, Section 5.3.2.2. at 112-13.

93.     Each of the '360 Accused Power Transmitters, including, for example, the MagSafe Charger, is configured to receive at least one regulation signal. For example, the MagSafe Charger is Qi-compliant and implements the MPP system, which requires at least one regulation signal, for

example, power transfer regulation messages or packets, such as a control error (CE or XCE) packets. *See, e.g.*, Qi Communications Protocol, Section 7 at 61-62.

94.    Each of the '360 Accused Power Transmitters, including, for example, the MagSafe Charger, is configured to receive at least one confirmation signal sent from said secondary unit. For example, the MagSafe Charger is Qi-compliant and implements the MPP system, which requires at least one confirmation signal sent from the secondary unit, such as messages or packets, for example, a SIG packet. *See, e.g.*, Qi Communications Protocol, Section 4.2.2 at 25, Section 8.14 at 112.

95.    Each of the '360 Accused Power Transmitters, including, for example, the MagSafe Charger, includes at least one primary signal receiver operable to receive electromagnetic signals selected from at least one regulation signal and at least one confirmation signal sent from a secondary unit thereby establishing a communication channel therebetween. For example, the MagSafe Charger is Qi-compliant and implements the MPP system, which requires at least one primary signal receiver operable to receive electromagnetic signals selected from at least one regulation signal and at least one confirmation signal sent from a secondary unit thereby establishing a communication channel therebetween. *See, e.g.*, Qi Introduction, Section 3.1 at 2, Section 4.5 at 2; Qi MPP System, Section 1.2.1 at 13, Section 5.1 at 105, Section 5.3.1 at 109-110; Qi Communications Physical Layer, Section 2 at 7, Section 2.1 at 7-8, Section 2.2 at 9, Section 2.3 at 10, Section 2.4 at 11.

96.    Each of the '360 Accused Power Transmitters, including, for example, the MagSafe Charger, includes at least one primary microcontroller. For example, the MagSafe Charger is Qi-compliant and implements the MPP system, which requires at least one primary microcontroller.

*See, e.g.*, Qi MPP System, Section 1.2.2 at 15, Section 4.3.1 at 65-66; Qi PTx Reference Designs, Section 14 at 42, Section 31 at 107, Section 32 at 113, Section 48 at 165.

97.     Each of the '360 Accused Power Transmitters, including, for example, the MagSafe Charger, includes at least one primary microcontroller comprising circuitry configured and operable to generate detection pulses. For example, the MagSafe Charger is Qi-compliant and implements the MPP system, which requires at least one primary microcontroller comprising circuitry configured and operable to generate detection pulses, for example, one or more Digital Pings to detect the presence of a Power Receiver. *See, e.g.*, Qi Communications Protocol, Section 4 at 19-20, Section 4.2 at 24, Section 4.2.1 at 24, Section 4.2.3 at 25.

98.     Each of the '360 Accused Power Transmitters, including, for example, the MagSafe Charger, includes at least one primary microcontroller comprising circuitry configured and operable to activate the driver in response to confirmation signals. For example, the MagSafe Charger is Qi-compliant and implements the MPP system, which requires at least one primary microcontroller comprising circuitry configured and operable to activate the driver in response to confirmation signals. *See, e.g.*, Qi Communications Protocol, Section 4.1.1 at 22, Section 5.1 at 29, Section 7 at 61-64.

99.     Each of the '360 Accused Power Transmitters, including, for example, the MagSafe Charger, includes at least one primary microcontroller comprising circuitry configured and operable to regulate the driver according to regulation signals. For example, the MagSafe Charger is Qi-compliant and implements the MPP system, which requires at least one primary microcontroller comprising circuitry configured and operable to regulate the driver according to regulation signals. *See, e.g.*, Qi Communications Protocol, Section 7 at 63-66, 87.

100.    Each of the '360 Accused Power Receivers, including for example, the iPhone 16, is a secondary unit operable to receive power wirelessly from a primary unit operable to transmit power wirelessly. For example, the iPhone 16 supports Qi Wireless Power (*i.e.,* the iPhone 16 can receive power wirelessly via a Qi-compliant/certified charger (*e.g.*, a primary unit)).

101.    Each of the '360 Accused Power Receivers, including for example, the iPhone 16, includes a secondary coil operable to receive power wirelessly from a primary unit. For example, teardowns of the iPhone 16 show a secondary coil operable to receive power wirelessly from a primary unit.



https://www.ifixit.com/News/100352/we-hot-wired-the-iphone-16.

102.    Each of the '360 Accused Power Receivers, including for example, the iPhone 16, includes a secondary signal transmitter operable to transmit electromagnetic signals selected from at least one regulation signal and at least one confirmation signal to a primary unit thereby establishing a communication channel therebetween. For example, on information and belief, each of the '360 Accused Power Receivers follow Qi standard version 2.0. In accordance with the Qi

standard version 2.0, each of the '360 Accused Power Receivers incorporates a communication protocol between a power transmitter (*i.e.*, a primary unit) and a power receiver (*i.e.*, a secondary unit) to communicate requests and other information to the power transmitter by modulating its reflected impedance, and to provide synchronization and other information to the power receiver by modulating its operating frequency. *See* Qi Introduction, Section 3.1 at 2.

103.    Each of the '360 Accused Power Receivers, including for example, the iPhone 16, includes a secondary microcontroller. For example, on information and belief, each of the '360 Accused Power Receivers follows Qi standard version 2.0. In accordance with the Qi standard version 2.0, each of the '360 Accused Power Receivers incorporates a communication and control unit (*i.e.*, a secondary microcontroller). *See* Qi Power Delivery, Section 3 at 10-12.

104.    Each of the '360 Accused Power Receivers, including for example, the iPhone 16, includes a secondary microcontroller comprising circuitry configured and operable to generate a confirmation signal in response to a detection pulse received from a primary unit, to monitor power transferred to a secondary coil, and to generate a regulation signal according to monitored power. For example, on information and belief, each of the '360 Accused Power Receivers follows Qi standard version 2.0. In accordance with the Qi standard version 2.0, each of the '360 Accused Power Receivers incorporates a communication and control unit (*i.e.*, a secondary microcontroller) that executes the relevant power control algorithms and protocols, drives the communications modulator, controls the output disconnect switch, and monitors several sensing circuits in a power pick-up unit and the load. *See* Qi Power Delivery, Section 3 at 10-12.

105.    The foregoing features and capabilities of the iPhone 16, and Apple's description and/or demonstration thereof, including in user manuals and advertising, and in view of the Qi

Standard, reflect Apple's direct infringement by satisfying every element of at least claims 1-20 of the '360 Patent, under 35 U.S.C. § 271(a).

106.    Apple has indirectly infringed at least claims 1-20 of the '360 Patent in this District and elsewhere in the United States, including in Texas, by, among other things, willingly, knowingly, intentionally, and actively inducing the use, offering for sale, selling, or importation of at least the '360 Accused Products, and continues to do so by, for example, selling, offering for sale, and encouraging its customers to use the '360 Accused Products in an infringing manner by providing information and technical support, including in promotional materials, product manuals, brochures, videos, demonstrations, and website materials. Apple's customers who purchase devices and components thereof and operate such devices and components in accordance with Apple's instructions directly infringe one or more claims of the '360 Patent in violation of 35 U.S.C. § 271. Apple instructs its customers through at least user guides, such as those for the iPhone 16 and the MagSafe Charger located at the following website: https://support.apple.com/guide/iphone/welcome/ios. For example, Apple instructs customers to wirelessly charge iPhones and AirPods using Qi-certified wireless chargers, like the MagSafe Charger. *See,  e.g.,*   https://support.apple.com/guide/iphone/qi-certified-wireless-chargers-iph91de3977e/26/ios/26  and  https://support.apple.com/guide/iphone/welcome/ios.  Apple  is therefore liable for infringement of the '360 Patent pursuant to 35 U.S.C. § 271(b).

107.    Apple has indirectly infringed at least claims 1-20 of the '360 Patent by, among other things, knowingly contributing to the direct infringement of others, including customers of the '360 Accused Products by making, offering to sell, or selling, in the United States, or importing a component of a patented process, constituting a material part of the invention, knowing the same

to be especially made or especially adapted for use in infringement of the '360 Patent, and not a staple article or commodity of commerce suitable for substantial non-infringing use.

108.    For example, the '360 Accused Products include at least one component to transmit power wirelessly to a secondary unit operable to receive power wirelessly. This is a component of a patented machine, manufacture, or combination, or an apparatus for use in practicing a patented process. Furthermore, such component is a material part of the invention and upon information and belief is not a staple article or commodity of commerce suitable for substantial non-infringing use. Thus, Apple is liable for infringement of the '360 Patent pursuant to 35 U.S.C. § 271(c).

109.    Apple has been on notice of the '360 Patent since at least July 30, 2025. By the time of trial, Apple will thus have known and intended (since receiving such notice), that its continued actions would actively induce and contribute to infringement of at least claims 1-20 of the '360 Patent.

110.    Apple undertook and continues its infringing actions despite an objectively high likelihood that such activities infringed the '360 Patent, which has been duly issued by the USPTO, and is presumed valid. Moreover, Apple's infringement of the '360 Patent has been willful and exceptional in view of the above, as well as its failure to take any action, even after being put on notice, to stop its infringement, or inducement of, or contribution to, infringement by others. For example, since at least July 30, 2025, Apple has been aware that its actions constituted and continue to constitute infringement of the '360 Patent, and that the '360 Patent is valid. On information and belief, Apple could not reasonably, subjectively believe that its actions do not constitute infringement of the '360 Patent, particularly in light of the standard compliance, nor could it reasonably, subjectively believe that the patent is invalid. Despite that knowledge and

subjective belief, and the objectively high likelihood that its actions constitute infringement, Apple has continued its infringing activities. As such, Apple willfully infringes the '360 Patent.

111.    Powermat has been damaged by Apple's infringement of the '360 Patent.

## COUNT 4 – INFRINGEMENT OF U.S. PATENT NO. 11,611,240

112.    Powermat incorporates paragraphs 1-111 above by reference.

113.    The '240 Patent is directed to a pinless power plug for receiving wireless power from a pinless power jack and a pinless power jack for transmitting wireless power to a pinless power plug. For example, the '240 Patent discloses a pinless power plug that includes: (1) a secondary coil for inductively coupling with a primary coil that is associated with a pinless power jack and shielded behind an insulating layer; (2) magnetic anchors configured to magnetically couple with at least two magnetic snags in the pinless power jack, and arranged around a perimeter of the secondary coil in an annular configuration concentric and non-overlapping with the secondary coil; and (3) one magnet spaced away from and outside of the annular configuration of the magnetic anchors, such that the one magnet is magnetically coupled with a magnet in the pinless power jack at a particular orientation or angle.

114.    Apple has directly infringed one or more claims of the '240 Patent in this District and elsewhere in the United States, including in Texas, including at least claims 1-3, 5 (or in the alternative claim 6), 7-13, 15 (or in the alternative claim 16), 17-20 literally and/or under the doctrine of equivalents, by or through its sale, offer for sale, manufacture, use, or import of its wireless charging products, including at least the '240 Accused Power Receivers (i.e., the iPhone 16e, the iPhone 16 Pro, the iPhone 16 Pro Max, the iPhone 16, the iPhone 16 Plus, the iPhone 15 Pro, the iPhone 15 Pro Max, the iPhone 15, the iPhone 15 Plus, the iPhone 14 Pro Max, the iPhone 14 Pro, the iPhone 14 Plus, the iPhone 14, the iPhone SE (3rd generation), the iPhone 13 Pro Max, the iPhone 13 Pro, the iPhone 13, the iPhone 13 mini, the iPhone 12 Pro Max, the iPhone 12 Pro,

the iPhone 12, the iPhone 12 mini, the MagSafe Battery Pack, the iPhone Air MagSafe Battery, the Nimble Champ 10k Wireless Portable Charger, and any wireless power receiver product containing materially similar functionality that is made, used, sold, offered for sale, or imported by Apple) and the '240 Accused Power Transmitters (*i.e.*, the MagSafe Battery Pack, the iPhone Air MagSafe Battery, the mophie Magnetic Wireless Charging Car Vent Mount (MagSafe compatible), the Nimble Champ 10k Wireless Portable Charger, the Scosche MagicMount™ Charge Elite 3-in-1, and any wireless power transmitter product containing materially similar functionality that is made, used, sold, offered for sale, or imported by Apple) (collectively, "the '240 Accused Products"). Powermat reserves the right to discover and pursue any additional infringing devices that incorporate infringing functionalities. For the avoidance of doubt, the '240 Accused Products are identified to describe Apple's infringement and in no way limit the discovery and infringement allegations against Apple concerning other devices that incorporate the same or reasonably similar functionalities.

115.    At least some of the asserted claims of the '240 Patent are essential to practicing the Qi Standard. Apple has indicated that the iPhone 16 complies with "Qi2 wireless charging up to 15W." https://support.apple.com/en-us/121029. Moreover, each of the '240 Accused Power Receivers is declared as supporting "Qi wireless power" and compliant with version 2.0 or later of the Qi Standard.

## 34.1 Qi Wireless Power

Devices supporting Qi wireless power:

- iPhone 17 Pro Max
- iPhone 17 Pro
- iPhone 17
- iPhone Air
- iPhone 16e
- iPhone 16 Pro Max
- iPhone 16 Pro
- iPhone 16 Plus
- iPhone 16
- iPhone 15 Pro Max
- iPhone 15 Pro
- iPhone 15 Plus
- iPhone 15
- iPhone 14 Pro Max
- iPhone 14 Pro
- iPhone 14 Plus
- iPhone 14
- iPhone SE (3rd generation)
- iPhone 13 Pro Max
- iPhone 13 Pro
- iPhone 13
- iPhone 13 mini
- iPhone 12 Pro Max
- iPhone 12 Pro
- iPhone 12
- iPhone 12 mini

---

- iPhone SE (2nd generation)
- iPhone 11 Pro Max
- iPhone 11 Pro
- iPhone 11
- iPhone XS Max
- iPhone XS
- iPhone XR
- iPhone X
- iPhone 8 Plus
- iPhone 8
- Wireless Charging Case (USB-C) for AirPods 4
- MagSafe Charging Case (USB-C) for AirPods Pro (2nd generation)
- MagSafe Charging Case for AirPods Pro (2nd generation)
- MagSafe Charging Case for AirPods (3rd generation)
- Wireless Charging Case for AirPods

Accessories incorporating a Qi transmitter shall use an embedded Qi Certified subsystem or shall be Qi Certified according to *The Qi Wireless Power Transfer System, Power Class 0 Specification – Version 2.0 or later*, see https://www.wirelesspowerconsortium.com. Accessories should support version 2.2 or later.

Accessory Design Guidelines for Apple Devices, R28 (dated December 8, 2025) at 182-83 (found at https://developer.apple.com/accessories/Accessory-Design-Guidelines.pdf).

53

116.    Apple has also indicated that "[t]he MagSafe Charger is certified for Qi2 25W and Qi charging, so it can be used to wirelessly charge your iPhone 8 or later, as well as AirPods models with a wireless charging case" (*i.e.*, each of the '240 Accused Power Receivers). https://www.apple.com/shop/product/mgd74ll/a/magsafe-charger-1-m. As such, the iPhone 16, the MagSafe Charger, and all materially similar Apple products—including each of the '240 Accused Products—infringe at least claims 1-3, 5 (or in the alternative claim 6), 7-13, 15 (or in the alternative claim 16), 17-20 of the '240 Patent, literally and/or under the doctrine of equivalents.

117.    Each of the '240 Accused Power Receivers, including for example, the iPhone 16, includes a pinless power plug for receiving wireless power from a pinless power jack (*e.g.*, MagSafe Charger).

**Power and Battery[5]**

iPhone 16

Video playback
Up to 22 hours

Video playback (streamed)
Up to 18 hours

Audio playback
Up to 80 hours

iPhone 16 Plus

Video playback
Up to 27 hours

Video playback (streamed)
Up to 24 hours

Audio playback
Up to 100 hours

Both models

Built-in rechargeable lithium-ion battery

Fast-charge capable:
Up to 50% charge in around 30 minutes[6] with 20W adapter or higher (available separately) paired with USB-C charging cable, or 30W adapter or higher paired with MagSafe Charger (both available separately)

| **MagSafe and Wireless Charging** | MagSafe wireless charging up to 25W⁹ |
| | Qi2 wireless charging up to 25W⁹ |
| | Magnet array |
| | Alignment magnet |
| | Accessory Identification NFC |
| | Magnetometer |

https://www.apple.com/iphone-16/specs/.

118.    Each of the '240 Accused Power Receivers, including, for example, the iPhone 16, includes at least one secondary coil for inductively coupling with a primary coil, wherein the primary coil is associated with the pinless power jack, and wherein the primary coil is shielded behind an insulating layer. For example, the following screenshot of the iPhone 16 shows a secondary coil for inductively coupling with a primary coil.



https://www.ifixit.com/News/100693/more-modular-than-ever-before-iphone-16-pro-and-pro-max-teardown.

119.    The iPhone 16 is further compatible with the MagSafe Charger, which includes a primary coil—shielded behind an insulating layer—associated with the pinless power jack. *See* https://www.apple.com/shop/product/MGD74LL/A/magsafe-charger-1-m. For example, the Qi standard requires the primary coil to be shielded by a shielding layer such as a ferrite shield to restrict magnetic fields. Qi MPP System Specification, Section 3.2.1.3 at 21.

120.    Each of the '240 Accused Power Receivers, including for example, the iPhone 16, includes at least two magnetic anchors arranged around a perimeter of the at least one secondary coil in an annular configuration concentric and non-overlapping with the at least one secondary coil, wherein the at least two magnetic anchors are configured to magnetically couple with at least two magnetic snags in the pinless power jack. For example, the following screenshot of the iPhone 16 shows at least two magnetic anchors—configured to magnetically couple with at least two magnetic snags—arranged around a perimeter of the at least one secondary coil in an annular configuration concentric and non-overlapping with the at least one secondary coil.



https://www.ifixit.com/News/100693/more-modular-than-ever-before-iphone-16-pro-and-pro-max-teardown.

121.    Each of the '240 Accused Power Receivers, including for example, the iPhone 16, includes at least one magnet spaced away from and outside of the annular configuration of the at least two magnetic anchors, wherein the at least one magnet is configured to magnetically couple with a magnet in the pinless power jack at a particular orientation or angle. For example, the following screenshot of the iPhone 16 shows at least one magnet—configured to magnetically couple with a magnet in the pinless power jack at a particular orientation or angle—spaced away from and outside of the annular configuration of the at least two magnetic anchors.



https://www.ifixit.com/News/100693/more-modular-than-ever-before-iphone-16-pro-and-pro-max-teardown.

122. Each of the '240 Accused Power Transmitters, including for example, the iPhone Air MagSafe Battery, is a pinless power jack for transmitting wireless power to a pinless power plug like the iPhone 16. *See, e.g.*, Qi System Description, Introduction, at 5-9.

123. On information and belief, the iPhone Air MagSafe Battery includes at least one primary coil, shielded on a side of an insulating layer, for inductively coupling with a secondary coil associated with the pinless power plug, where the secondary coil is on a different side of the insulating layer. *See, e.g.*, *id*. at 8-9; Qi System Description, Parts 1 & 2, at 14, 26-27.

124. Each of the '240 Accused Power Transmitters, including for example, the iPhone Air MagSafe Battery, includes at least two magnetic snags arranged around a perimeter of the at least one primary coil in an annular configuration concentric and non-overlapping with the at least one primary coil, where the at least two magnetic snags are configured to magnetically couple with at least two magnetic anchors in the pinless power plug. *See, e.g.*, Qi System Description, Parts 1 & 2, at 163.

125. On information and belief, each of the '240 Accused Power Transmitters, including for example, the iPhone Air MagSafe Battery, includes at least one magnet spaced away from and outside of the annular configuration of the at least two magnetic snags, where the at least one magnet is configured to magnetically couple with a magnet in the pinless power plug at a particular orientation or angle. *See, e.g.*, *id*.

126. The foregoing features and capabilities of the iPhone 16 and iPhone Air MagSafe Battery, and Apple's description and/or demonstration thereof, including in user manuals and advertising, reflect Apple's direct infringement by satisfying every element of at least claims 1-3, 5 (or in the alternative claim 6), 7-13, 15 (or in the alternative claim 16), and 17-20 of the '240 Patent, under 35 U.S.C. § 271(a).

127.    Apple has indirectly infringed at least claims 1-3, 5 (or in the alternative claim 6), 7-13, 15 (or in the alternative claim 16), and 17-20 of the '240 Patent in this District and elsewhere in the United States, including in Texas, by, among other things, willingly, knowingly, intentionally, and actively inducing the use, offering for sale, selling, or importation of at least the '240 Accused Products, and continues to do so by, for example, selling, offering for sale, and encouraging its customers to use the '240 Accused Products in an infringing manner by providing information and technical support, including in promotional materials, product manuals, brochures, videos, demonstrations, and website materials. Apple's customers who purchase devices and components thereof and operate such devices and components in accordance with Apple's instructions directly infringe one or more claims of the '240 Patent in violation of 35 U.S.C. § 271. Apple instructs its customers through at least user guides, such as those for the iPhone 16 located at the following website: https://support.apple.com/guide/iphone/welcome/ios. For example, Apple instructs customers to wirelessly charge iPhones using Qi-certified wireless chargers, like the iPhone Air MagSafe Battery. *See,* *e.g.*, https://www.apple.com/shop/product/MGPG4AM/A/iphone-air-magsafe-battery. Apple is therefore liable for infringement of the '240 Patent pursuant to 35 U.S.C. § 271(b).

128.    Apple has indirectly infringed at least claims 1-3, 5 (or in the alternative claim 6), 7-13, 15 (or in the alternative claim 16), and 17-20 of the '240 Patent by, among other things, knowingly contributing to the direct infringement of others, including customers of the '240 Accused Products by making, offering to sell, or selling, in the United States, or importing a component of a patented process, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in infringement of the '240 Patent, and not a staple article or commodity of commerce suitable for substantial non-infringing use.

129.    For example, the '240 Accused Products include at least one component to receive wireless power from a pinless power jack and/or transmit wireless power to a pinless power plug. This is a component of a patented machine, manufacture, or combination, or an apparatus for use in practicing a patented process. Furthermore, such component is a material part of the invention and upon information and belief is not a staple article or commodity of commerce suitable for substantial non-infringing use. Thus, Apple is liable for infringement of the '240 Patent pursuant to 35 U.S.C. § 271(c).

130.    Apple has been on notice of the '240 Patent since at least July 5, 2024. By the time of trial, Apple will thus have known and intended (since receiving such notice), that its continued actions would actively induce and contribute to infringement of at least claims 1-3, 5 (or in the alternative claim 6), 7-13, 15 (or in the alternative claim 16), and 17-20 of the '240 Patent.

131.    Apple undertook and continues its infringing actions despite an objectively high likelihood that such activities infringed the '240 Patent, which has been duly issued by the USPTO, and is presumed valid. Moreover, Apple's infringement of the '240 Patent has been willful and exceptional in view of the above, as well as its failure to take any action, even after being put on notice, to stop its infringement, or inducement of, or contribution to, infringement by others. For example, since at least July 5, 2024, Apple has been aware that its actions constituted and continue to constitute infringement of the '240 Patent, and that the '240 Patent is valid. On information and belief, Apple could not reasonably, subjectively believe that its actions do not constitute infringement of the '240 Patent, particularly in light of the standard compliance, nor could it reasonably, subjectively believe that the patent is invalid. Despite that knowledge and subjective belief, and the objectively high likelihood that its actions constitute infringement, Apple has continued its infringing activities. As such, Apple willfully infringes the '240 Patent.

132.    Powermat has been damaged by Apple's infringement of the '240 Patent.

### COUNT 5 – INFRINGEMENT OF U.S. PATENT NO. 11,626,759

133.    Powermat incorporates paragraphs 1-132 above by reference.

134.    The '759 Patent is directed to a system and method for inductively providing electrical power at a plurality of power levels to electrical devices. For example, the '759 Patent discloses a coil of a receiver inductively coupled to an inductor of an inductive power outlet, where the coil and the inductor have a resonant frequency. The receiver further includes a feedback signal generator for providing a feedback signal to the inductive power outlet, such that the receiver: (1) receives the power generated by the inductive power outlet in accordance with the inductive power outlet receiving a direct current (DC) from a DC power supply; (2) selects a power level;  and (3) converts the DC at the selected power level to generate an alternating current (AC) voltage across the one inductor that has a frequency that is different from the resonant frequency.

135.    Apple has directly infringed one or more claims of the '759 Patent in this District and elsewhere in the United States, including in Texas, including at least claims 1-4, 8-9, and 13-19 literally and/or under the doctrine of equivalents, by or through its sale, offer for sale, manufacture, use, or import of its wireless charging products, including at least at least the '759 Accused Power Receivers (*i.e.*, the iPhone 16e, the iPhone 16 Pro, the iPhone 16 Pro Max, the iPhone 16, the iPhone 16 Plus, the iPhone 15 Pro, the iPhone 15 Pro Max, the iPhone 15, the iPhone 15 Plus, the iPhone 14 Pro Max, the iPhone 14 Pro, the iPhone 14 Plus, the iPhone 14, the iPhone SE (3rd generation), the iPhone 13 Pro Max, the iPhone 13 Pro, the iPhone 13, the iPhone 13 mini, the iPhone 12 Pro Max, the iPhone 12 Pro, the iPhone 12, the iPhone 12 mini, the iPhone SE (2nd generation), the iPhone 11 Pro Max, the iPhone 11 Pro, the iPhone 11, the iPhone XR, the iPhone XS Max, the iPhone XS, the iPhone X, the iPhone 8 Plus, the iPhone 8, the AirPods Pro (1st generation), the AirPods Pro (2nd generation), the AirPods (3rd generation), the AirPods

2 (with wireless charging case), the AirPods 3 (with wireless charging case), the AirPods 4 (with Active Noise Cancellation), the MagSafe Battery Pack, the iPhone Air MagSafe Battery, the Nimble Champ 10k Wireless Portable Charger, and any wireless power receiver product containing materially similar functionality that is made, used, sold, offered for sale, or imported by Apple) and the '759 Accused Power Transmitters (*i.e.*, the MagSafe Battery Pack, the iPhone Air MagSafe Battery, the MagSafe Charger (1m), the MagSafe Charger (2m), the MagSafe Duo Charger, the mophie Magnetic Wireless Charging Car Vent Mount (MagSafe compatible), the mophie 3-in-1 Travel Charger (MagSafe compatible), the Nimble Champ 10k Wireless Portable Charger, the Nimble Podium 3-in-1 Wireless Charger, the Nimble Fold 3-in-1 Wireless Charger - Deep Purple, the Nimble 3-in-1 Fold Wireless Charger – Black, the Nimble Valet 3-in-1 Wireless Charger, the Scosche MagicMount™ Charge Elite 3-in-1, the Twelve South Forté for MagSafe Charger, the Twelve South HiRise 2 Deluxe 2-in-1 Wireless Charging Stand, the Twelve South ButterFly SE 2-in-1 USB-C Qi2 Travel Charger – Purple, the Twelve South HiRise 3 Deluxe 3-in-1 Wireless Charging Stand – Black, the Zens 4-1 Wireless Charger, the Zens Quattro Wireless Charger Pro 4, and any wireless power transmitter product containing materially similar functionality that is made, used, sold, offered for sale, or imported by Apple) (collectively, "the '759 Accused Products"). Powermat reserves the right to discover and pursue any additional infringing devices that incorporate infringing functionalities. For the avoidance of doubt, the '759 Accused Products are identified to describe Apple's infringement and in no way limit the discovery and infringement allegations against Apple concerning other devices that incorporate the same or reasonably similar functionalities.

136.    At least some of the asserted claims of the '759 Patent are essential to practicing the Qi Standard. Apple has indicated that the iPhone 16 complies with "Qi2 wireless charging up

to 15W." https://support.apple.com/en-us/121029. Moreover, each of the '759 Accused Products

are declared as supporting "Qi wireless power" and compliant with version 2.0 or later of the Qi

Standard.

- iPhone SE (2nd generation)
- iPhone 11 Pro Max
- iPhone 11 Pro
- iPhone 11
- iPhone XS Max
- iPhone XS
- iPhone XR
- iPhone X
- iPhone 8 Plus
- iPhone 8
- Wireless Charging Case (USB-C) for AirPods 4
- MagSafe Charging Case (USB-C) for AirPods Pro (2nd generation)
- MagSafe Charging Case for AirPods Pro (2nd generation)
- MagSafe Charging Case for AirPods (3rd generation)
- Wireless Charging Case for AirPods

Accessories incorporating a Qi transmitter shall use an embedded Qi Certified subsystem or shall be Qi Certified according to *The Qi Wireless Power Transfer System, Power Class 0 Specification – Version 2.0 or later*, see https://www.wirelesspowerconsortium.com. Accessories should support version 2.2 or later.

Accessory Design Guidelines for Apple Devices, R28 (dated December 8, 2025) at 182-83 (found at https://developer.apple.com/accessories/Accessory-Design-Guidelines.pdf). As such, the iPhone 16, and all materially similar Apple products—including each of the '759 Accused Power Receivers—infringe at least claims 13-19 of the '759 Patent, literally and/or under the doctrine of equivalents.

137.    Apple has also indicated that that "[t]he MagSafe Charger is certified for Qi2 25W and Qi charging, so it can be used to wirelessly charge your iPhone 8 or later, as well as AirPods models with a wireless charging case" (*i.e.*, each of the '759 Accused Power Receivers). https://www.apple.com/shop/product/mgd74ll/a/magsafe-charger-1-m. As such, the iPhone 16, the MagSafe Charger, and all materially similar Apple products—including each of the '759 Accused Power Transmitters —infringe at least claims 1-4 and 8-9 of the '759 Patent, literally and/or under the doctrine of equivalents.

138.    Each of the '759 Accused Power Transmitters, including, for example, the MagSafe Charger, includes an inductive power outlet for inductively transmitting power to a receiver.

## MagSafe Charger (1 m)

$39.00

or

$3.25/mo. for 12 mo.*

Get 3% Daily Cash back with Apple Card
⊕

| Length |
| --- |
| 1 meter ⌄ |

⊡ Order now. Pick up in store:
   Fri, Feb 13 at Apple Highland Village

⊡ Order by 3 p.m. Delivers to 77002 ⊕
   Within 2 hours from Store — $9.00
   Thu, Feb 12 — Free

[ Check out with  Pay ]

[ Add to Bag ]



## Product Information ⌃

### Overview

The MagSafe Charger makes wireless charging a snap. The perfectly aligned magnets attach to compatible iPhone models. The MagSafe Charger provides faster wireless charging up to 25W when paired with a 30W power adapter.

The MagSafe Charger is certified for Qi2 25W and Qi charging, so it can be used to wirelessly charge your iPhone 8 or later, as well as AirPods models with a wireless charging case.

Available in two cable lengths: 1 meter and 2 meters.

The magnetic alignment experience only applies to iPhone 12, iPhone 13, iPhone 14, iPhone 15, compatible iPhone 16 models, iPhone 17 models, and iPhone Air.

Recommended:

For faster wireless charging up to 25W — up to 50 percent battery in around 30 minutes for compatible iPhone 16 models, iPhone 17 models, and iPhone Air when paired with the 30W USB-C Power Adapter (sold separately).**

For fast wireless charging up to 15W for iPhone 12 or later with MagSafe when paired with the 20W USB-C Power Adapter (sold separately).**

For wireless charging up to 7.5W for iPhone 8 or later with Qi when paired with the 20W USB-C Power Adapter (sold separately).**

https://www.apple.com/shop/product/mgd74ll/a/magsafe-charger-1-m.



Figure 2.2.2: 4 MPP PTx functional diagram.

Qi MPP System, Section 1.2.2 at 15.

139.    Each of the '759 Accused Power Transmitters, including, for example, the MagSafe

Charger, includes at least one inductor inductively coupled to a coil of the receiver having together

a resonant frequency. *See, e.g.*, Qi Introduction, Section 3.1 at 1, Section 4.4. at 2, Section 3.1. at

2; Qi Power Delivery, Section 2 at 8, Section 3 at 10-12; Qi MPP System, Section 4.2.1.3 at 60-

61, 64.

140.    Each of the '759 Accused Power Transmitters, including, for example, the MagSafe

Charger, includes a driver configured to receive a direct current (DC) from a DC power supply,

select a power level of a plurality of power levels, and convert the DC at the power level to generate

an alternating current (AC) voltage across the at least one inductor. *See, e.g.*, Qi Introduction,

Section 4 at 11; Qi Power Delivery, Section 2 at 8, Section 3 at 13; Qi Communications Protocol,

Section 6 at 39, Section 6.1 at 41, Section 7 at 61; Qi MPP System, Section 1.2.1 at 13, Section

1.2.2 at 15, Section 4.3.1 at 65, Section 4.6.2 at 76-78; Qi MPP Communications Protocol, Section 2.1 at 10, Section 2.3.3 at 16-19.

141.    Each of the '759 Accused Power Transmitters, including, for example, the MagSafe Charger, is configured such that a frequency of the AC voltage is different from the resonant frequency. *See, e.g.*, Qi Introduction, Section 4.2 at 11; Qi Power Delivery, Section 3 at 13; Qi MPP System, Section 4.3.1 at 65-68, and Section 4.6.1 at 69-71.

142.    Each of the '759 Accused Power Receivers, including, for example, the iPhone 16, includes a receiver inductively receiving power transmitted by an inductive power outlet. For example, the iPhone 16 supports Qi Wireless Power (*i.e.*, the iPhone 16 can receive power wirelessly via a Qi-complaint/certified charger (*e.g.*, an inductive power outlet)).

143.    Each of the '759 Accused Power Receivers, including, for example, the iPhone 16, includes a coil of the receiver inductively coupled to at least one inductor of the inductive power outlet, the coil and the at least one inductor having together a resonant frequency. For example, the iPhone 16 is Qi-compliant and implements the MPP system, which requires a coil of the receiver inductively coupled to at least one inductor of the inductive power outlet, the coil and the at least one inductor having together a resonant frequency. *See, e.g.*, Qi Introduction, Section 3.1 at 1, Section 4.4. at 2, Section 3.1. at 2; Qi Power Delivery, Section 2 at 8, Section 3 at 10-12. For example, the coil in the receiver is connected to receiver resonant capacitor(s) to form a resonant circuit of the receiver which has a resonant frequency when coupled with a primary resonant circuit involving a primary inductor and primary capacitor(s). *See* Qi MPP System, Section 4.2.1.3 at 60-61, 64.

144.    Each of the '759 Accused Power Receivers, including, for example, the iPhone 16, includes a feedback signal generator configured to provide a feedback signal to the inductive power

outlet. For example, the iPhone 16 is Qi-compliant and implements the MPP system, which requires a feedback signal generator, for example, an ASK modulator, ASK transmitter, or Communications/Control Circuit configured to provide a feedback signal to the inductive power outlet. *See, e.g.*, Qi Power Delivery, Section 3 at 10-12; Qi MPP System, Section 5.3.2.1 at 109-111.

145.    Each of the '759 Accused Power Receivers, including, for example, the iPhone 16, includes a receiver that receives the power generated by the inductive power outlet in accordance with the inductive power outlet receiving a direct current (DC) from a DC power supply, selecting a power level of a plurality of power levels, and converting the DC at the power level to generate an alternating current (AC) voltage across the at least one inductor. For example, the iPhone 16 is Qi-compliant and implements the MPP system, which requires a receiver that receives the power generated by the inductive power outlet in accordance with the inductive power outlet receiving a direct current (DC) from a DC power supply, selecting a power level of a plurality of power levels, and converting the DC at the power level to generate an alternating current (AC) voltage across the at least one inductor. *See, e.g.*, Qi Introduction, Section 4 at 11; Qi Power Delivery, Section 2 at 8, Section 3 at 13; Qi Communications Protocol, Section 6 at 39, Section 6.1 at 41, Section 7 at 61.

146.    Each of the '759 Accused Power Receivers, including, for example, the iPhone 16, receives AC voltage, wherein the frequency of the AC voltage is different from the resonant frequency. For example, the iPhone 16 is Qi-compliant and implements the MPP system, which requires AC voltage, wherein the frequency of the AC voltage is different from the resonant frequency. *See, e.g.*, Qi Introduction, Section 4.2 at 11; Qi Power Delivery, Section 3 at 13- 16, Section 10 at 34-35; Qi Communications Protocol, Section 7 at 61.  For example, a BPP

transmission frequency of 128 kHz is higher than a BPP resonant frequency. Similarly, an MPP transmission frequency of 360 kHz is higher than an MPP resonant frequency. *See, e.g.*, Qi MPP System, Section 4.3.1 at 65-66, and 69.

147.    The foregoing features and capabilities of the iPhone 16 and the MagSafe Charger, and Apple's description and/or demonstration thereof, including in user manuals and advertising, and in view of the Qi standard, reflect Apple's direct infringement by satisfying every element of at least claims 1-4, 8-9, and 13-19 of the '759 Patent, under 35 U.S.C. § 271(a).

148.    Apple has indirectly infringed at least claims 1-4, 8-9, and 13-19 of the '759 Patent in this District and elsewhere in the United States, including in Texas, by, among other things, willingly, knowingly, intentionally, and actively inducing the use, offering for sale, selling, or importation of at least the '759 Accused Products, and continues to do so by, for example, selling, offering for sale, and encouraging its customers to use the '759 Accused Products in an infringing manner by providing information and technical support, including in promotional materials, product manuals, brochures, videos, demonstrations, and website materials. Apple's customers who purchase devices and components thereof and operate such devices and components in accordance with Apple's instructions directly infringe one or more claims of the '759 Patent in violation of 35 U.S.C. § 271. Apple instructs its customers through at least user guides, such as those for the iPhone 16 and the MagSafe Charger located at the following website: https://support.apple.com/guide/iphone/welcome/ios. For example, Apple instructs customers to wirelessly charge iPhones and AirPods using Qi-certified wireless chargers, like the MagSafe Charger. *See, e.g.*, https://support.apple.com/guide/iphone/qi-certified-wireless-chargers-iph91de3977e/26/ios/26 and https://support.apple.com/guide/iphone/welcome/ios. Apple is therefore liable for infringement of the '759 Patent pursuant to 35 U.S.C. § 271(b).

149.    Apple has indirectly infringed at least claims 1-4, 8-9, and 13-19 of the '759 Patent by, among other things, knowingly contributing to the direct infringement of others, including customers of the '759 Accused Products by making, offering to sell, or selling, in the United States, or importing a component of a patented process, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in infringement of the '759 Patent, and not a staple article or commodity of commerce suitable for substantial non-infringing use.

150.    For example, the '759 Accused Power Receivers include at least one component to receive power transmitted by an inductive power outlet. This is a component of a patented machine, manufacture, or combination, or an apparatus for use in practicing a patented process. Furthermore, such component is a material part of the invention and upon information and belief is not a staple article or commodity of commerce suitable for substantial non-infringing use. Thus, Apple is liable for infringement of the '759 Patent pursuant to 35 U.S.C. § 271(c).

151.    Apple has been on notice of the '759 Patent since at least July 30, 2025. By the time of trial, Apple will thus have known and intended (since receiving such notice), that its continued actions would actively induce and contribute to infringement of at least claims 1-4, 8-9, and 13-19 of the '759 Patent.

152.    Apple undertook and continues its infringing actions despite an objectively high likelihood that such activities infringed the '759 Patent, which has been duly issued by the USPTO, and is presumed valid. Moreover, Apple's infringement of the '759 Patent has been willful and exceptional in view of the above, as well as its failure to take any action, even after being put on notice, to stop its infringement, or inducement of, or contribution to, infringement by others. For example, since at least July 30, 2025, Apple has been aware that its actions constituted and

continue to constitute infringement of the '759 Patent, and that the '759 Patent is valid. On information and belief, Apple could not reasonably, subjectively believe that its actions do not constitute infringement of the '759 Patent, particularly in light of the standard compliance, nor could it reasonably, subjectively believe that the patent is invalid. Despite that knowledge and subjective belief, and the objectively high likelihood that its actions constitute infringement, Apple has continued its infringing activities. As such, Apple willfully infringes the '759 Patent.

153.    Powermat has been damaged by Apple's infringement of the '759 Patent.

## DAMAGES

As a result of Apple's acts of infringement, Powermat has suffered actual and consequential damages. To the fullest extent permitted by law, Powermat seeks recovery of damages at least in the form of reasonable royalties. Powermat further seeks treble damages in view of Apple's egregious misconduct, including its willful infringement of the Asserted Patents. 35 U.S.C. § 284.

## JURY DEMAND

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Powermat demands a trial by jury on all issues triable as such.

## PRAYER FOR RELIEF

WHEREFORE, Powermat demands judgment for itself and against Apple as follows:

A. An adjudication that Apple has infringed U.S. Patent Nos. 8,188,619; 8,283,812; 9,666,360; 11,611,240; and 11,626,759.

B. An award of damages to be paid by Apple adequate to compensate Powermat for Apple's past infringement of the Asserted Patents, and any continuing or future infringement through the date such judgment is entered, including interest, costs, expenses and an

accounting of all infringing acts including, but not limited to, those acts not presented at trial;

C.  An award of enhanced damages to Powermat pursuant to 35 U.S.C. § 284;

D.  A declaration that this case is exceptional under 35 U.S.C. § 285 and an award of Powermat's reasonable attorneys' fees;

E.  All equitable relief that the Court find appropriate, including but not limited to an injunction against Apple's infringement of the Asserted Patents or, in the alternative, an order that Apple pay ongoing reasonable royalties to Powermat for any post-judgment infringement of the Asserted Patents; and

F.  An award to Powermat of such further relief at law or in equity as the Court deems just and proper.

| Dated: February 11, 2026 | Respectfully submitted, |
|---|---|
| *Of counsel:*<br>Kfir B. Levy<br>Jamie B. Beaber<br>Alan M. Grimaldi<br>William J. Barrow<br>Julia L. Haines<br>MAYER BROWN LLP<br>1999 K Street, N.W.<br>Washington D.C. 20006<br>(202) 263-3000<br>klevy@mayerbrown.com<br>jbeaber@mayerbrown.com<br>agrimaldi@mayerbrown.com<br>wbarrow@mayerbrown.com<br>jhaines@mayerbrown.com | */s/ Mark D. Siegmund*<br>Mark D. Siegmund<br>State Bar No. 24117055<br>CHERRY JOHNSON SIEGMUND JAMES PC<br>7901 Fish Pond Rd., 2nd Fl.<br>Waco, TX 76701<br>Tel: 254-732-2242<br>Email: msiegmund@cjsjlaw.com<br><br>*Counsel for Plaintiff Powermat Technologies Ltd.* |